

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DANIEL B.,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security

Defendant.

Case No.:  25-CV-1858 TWR (KSC)

**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**

(ECF No. 13)

Presently before the Court is the Joint Motion for Judicial Review ("Jt. Mot.," ECF No. 13) filed by Plaintiff Daniel B. and Defendant Frank Bisignano, Commissioner of Social Security, which the Court took under submission without oral argument pursuant to Federal Rule of Civil Procedure 78 and Civil Local Rule 7.1(e)(6)(f).  (*See* ECF No. 8 at 4.)  Having carefully considered the Joint Motion, the Administrative Record ("AR," ECF No. 7), and the relevant law, the Court **AFFIRMS** the decision of the Administrative Law Judge ("ALJ").

## BACKGROUND

Plaintiff filed a Title II application for disability insurance benefits on June 7, 2021, alleging a disability beginning on June 17, 2019.  (*See* AR at 17.)  His claim was denied initially on January 4, 2022, and upon reconsideration on June 9, 2022.  (*See id.*)  He then

requested a hearing, which was held telephonically before the Honorable Robert Iafe on July 25, 2023. (*See id.*)

The ALJ denied Plaintiff's claim by written order dated August 28, 2024. (*See id.* at 17–28.) First, the ALJ found that Plaintiff had last met the insured status requirements of the Social Security Act on December 31, 2023. (*See id.* at 19.)

The ALJ then moved to the five-step sequential evaluation process established by the Social Security Administration ("SSA") for determining whether an individual is disabled. (*See id.* at 18 (citing 20 C.F.R. § 404.1520(a)); *see also id.* at 19–26.)

At step one, *see* 20 C.F.R. § 404.1520(b), the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of June 17, 2019, through his date last insured of December 31, 2023. (*See* AR at 19 (citing 20 C.F.R. §§ 404.1517, *et seq.*).)

At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder, anxiety disorder, and posttraumatic stress disorder. (*See id.* (citing 20 C.F.R. § 404.1520(c)).)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*See* AR at 20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)

Before moving to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC") pursuant to 20 C.F.R. § 404.1520(e), (*see* AR at 18–19, 21–26), which is "[a]n individual's . . . ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." (*See id.* at 18.) Specifically, the ALJ found that Plaintiff

> had the residual functional capacity to perform a range of work at all exertional levels, as defined in 20 CFR 404.1567, and can understand, remember, and carry out simple instructions; can tolerate occasional and non-collaborative interaction with coworkers; can tolerate no interaction with the general public; and can tolerate occasional workplace changes.

25-CV-1858 TWR (KSC)

(*See* AR at 21.)  In determining Plaintiff's RFC, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not consistent with the medical evidence and other evidence in the record."  (*See id.* at 22.)  The ALJ specifically considered Plaintiff's testimony, (*see id.*), as well as the opinions of an independent psychological consultative examination by Dr. Kim Chronister, Psy.D.; psychiatrist Tonya Masino, Psy.D., and social worker Dimitriy Zelikman, LCSW, of the VA San Diego Healthcare System; therapist Kimthu Trinh, Ph.D. of the Energy Psychological & Wellness Center; Disability Determination Services ("DDS") psychological consultant H. Amado, M.D.; and DDS psychological consultant John Petzelt, Ph.D.  (*See id.* at 22–25.)

At step four, *see* 20 C.F.R. § 404.1520(f), the ALJ found that, through the date last insured, Plaintiff did not have the residual functional capacity to perform the requirements of his past relevant work as a truck driver and security guard.  (*See* AR at 26 (citing 20 C.F.R. § 404.1565).)

Finally, the ALJ determined whether Plaintiff was able to do any other work considering his RFC, age, education, and work experience.  (*See* AR at 19 (citing 20 C.F.R. § 404.1520(g)).)  Here, the ALJ found that Plaintiff was a "younger individual" on the date last insured, (*see id.* at 26 (citing 20 C.F.R. § 404.1563)); that Plaintiff had "at least a high school education[,]" (*see id.* (citing 20 C.F.R. § 404.1564)); and that "[t]ransferability of job skills [wa]s not material to the determination of disability because using the Medical-Vocational Rules as a framework support[ed] a finding that the claimant is 'not disabled,' whether or not the claimant ha[d] transferable job skills[,]" (*see id.* (citing SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2)).  Upon consideration of Plaintiff's age, education, work experience, and RFC, the ALJ found that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed[,]" (*see id.* (citing 20 C.F.R. §§ 404.1569, 404.1569a)), including "Laundry worker II," "Hospital cleaner," and "Pie bakery laborer."  (*See id.* at 27.)  The ALJ therefore concluded that Plaintiff "was

25-CV-1858 TWR (KSC)

not under a disability, as defined in the Social Security Act, at any time from June 17, 2019, the alleged onset date, through December 31, 2023, the date last insured[.]" (*See id.* (citing 20 C.F.R. § 404.1520(g)).)

On May 30, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (*See id.* at 1.) Plaintiff filed the instant action seeking judicial review under 42 U.S.C. § 405(g) on July 22, 2025, (*see generally* ECF No. 1), and, in accordance with the Court's directives, (*see generally* ECF No. 8), and following a brief stay as a result of the fall 2025 lapse in federal appropriations, *see In re Federal Lapse in Appropriations*, Gen. Order No. 766 (S.D. Cal. filed Oct. 7, 2025); (*see also* ECF Nos. 9–10), the Parties filed the instant Joint Motion on January 26, 2026. (*See generally* ECF No. 13.)

## STANDARD OF REVIEW

The Court has jurisdiction under 42 U.S.C. § 405(g), and "will not overturn the Commissioner's decision 'unless it is either not supported by substantial evidence or is based upon legal error.'" *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020)).

"Under the substantial-evidence standard, [the reviewing court] look[s] to the existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Woods*, 32 F.4th at 788 (internal quotation marks omitted) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "'Substantial' means 'more than a mere scintilla' but only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek*, 587 U.S. at 103). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

Although the reviewing court also may overturn the Commissioner's denial of benefits if the denial is based on legal error, "[a] decision of the ALJ will not be reversed

25-CV-1858 TWR (KSC)

for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)). An error is "harmless" when it is "clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014) (internal quotation marks omitted) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

## ANALYSIS

The instant appeal presents a single issue, *i.e.*, "[w]hether the ALJ's mental RFC finding properly accounts for [Plaintiff's] social interaction deficits." (*See* Jt. Mot. at 5.) Plaintiff contends that "[t]he ALJ's mental RFC finding is contrary to law as it does not fully account for Plaintiff's social interaction deficits." (*See id.* at 6; *see also generally id.* at 6–20.) Specifically, in addition to the "global defect in the ALJ's RFC, the exclusion of any limitation related to Plaintiff's ability to interact with supervisors[,]" (*see id.* at 12–13), Plaintiff contends that the ALJ erred in evaluating the assessments of both Dr. Chronister, (*see id.* at 13–16), and Dr. Trinh, (*see id.* at 16–19), and in rejecting Plaintiff's own description of his symptoms and limitations. (*See id.* at 19–20.) Defendant, on the other hand, argues that "the ALJ properly assessed an RFC that is consistent with the record as a whole and Plaintiff fails to demonstrate harmful legal error to warrant reversal." (*See id.* at 21 (emphasis omitted and cleaned up); *see also generally id.* at 21–29.)

## I.    Exclusion of Limitation Regarding Plaintiff's Ability to Interact with Supervisors

Plaintiff first contends that "*the ALJ's RFC illogically, and unsupported in the record, omits Plaintiff's ability to interact with supervisors from discussion.*" (*See* Jt. Mot. at 12 (emphasis in original). "[T]o demonstrate that an ALJ erred by failing to incorporate mental limitations in the RFC, a plaintiff has to 'identify . . . particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings' regarding mental functioning." *Marie Beth D. v. King*, No. 3:24-CV-00525-W-AHG, 2025

WL 504368, at *11 (S.D. Cal. Feb. 14) (alteration in original) (quoting *Woods*, 32 F.4th at 794), *report and recommendation adopted*, 2025 WL 1703509 (S.D. Cal. June 18, 2025).

Here, Dr. Trinh was the only source to opine that Plaintiff had any "restrictions in [his] ability to accept instructions and respond appropriately to criticism from supervisors." (*See* AR at 25; *see also generally id.* at 17–28.) As discussed below, *see infra* Section II.B, the ALJ did not err in concluding that Dr. Trinh's opinions were "not persuasive" because they were "overly restrictive based on [her] own treatment notes[]" and "not consistent with the balance of the objective medical evidence." (*See id.* at 25.) The only other opinion in the record—which the ALJ found unpersuasive for being "under restrictive based on the objective mental health evidence[,]" (*see id.*)—was that of Dr. Chronister, who opined that Plaintiff's "ability to accept instructions from supervisors [wa]s unimpaired." (*See id.*) In short, the ALJ considered but did not find persuasive any of the opinion evidence that was introduced regarding Plaintiff's ability to interact with supervisors. Accordingly, the ALJ did not err in declining to include a limitation regarding Plaintiff's ability to interact with supervisors in the RFC. *See, e.g.*, *Marie Beth D.*, 2025 WL 504368, at *11 (concluding that ALJ did not err where "there [wa]s substantial evidence in the record to support the ALJ's decision not to include Plaintiff's mild mental limitations expressly in the RFC").

**II.  Assessment of Medical Opinions**

Plaintiff next argues that the ALJ erred in assessing the medical opinions of Drs. Chronister and Trinh. (*See* Jt. Mot. at 13–19.) "When determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at 'face value.'" *Cross v. O'Malley*, 89 F.4th 1211, 1213 (9th Cir. 2024) (quoting *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020)). "Rather, the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion." *Id.* at 1213–14 (citing *Ford*, 950 F.3d at 1155 (citing 20 C.F.R. § 404.1527(c)(3))). "ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'" *Id.* at 1214 (quoting 20 C.F.R. § 416.920c(b)(2)). "[A]n ALJ cannot reject an examining or

treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* (quoting *Woods*, 32 F.4th at 792). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (alteration in original) (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

"An ALJ may discuss other factors, such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (quoting 20 C.F.R. § 416.920c(b)(2)). "Only if the ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record' must the ALJ then articulate how he or she considered these other factors." *Id.* (alteration in original) (quoting 20 C.F.R. §§ 416.920c(b)(3), (c)(3)–(5)).

### A.   Dr. Chronister

The ALJ found that "[t]he opinion of Dr. Chronister [wa]s not persuasive because the limitations [we]re under restrictive based on the objective mental health evidence." (*See* AR at 25.) The Court agrees with Defendant that "Plaintiff fails to demonstrate harmful legal error in the ALJ's evaluation of Dr. Chronister, as she found less restrictive limitations than what the ALJ assessed." (*See* Jt. Mot. at 24); *see also, e.g.*, *Burch*, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless."). Plaintiff therefore fails to establish that the ALJ erred in discounting Dr. Chronister's opinions regarding mild or non-impairments because Plaintiff's testimony and the objective medical evidence in the record supported the ALJ's assessment of several more severe mental health impairments.

### B.   Dr. Trinh

The ALJ concluded that "[t]he opinion of [Dr.] Trinh is not persuasive because the conclusions [we]re overly restrictive based on [Dr.] Trinh's own treatment notes" and because "[Dr.] Trinh's conclusions [we]re not consistent with the balance of the objective

25-CV-1858 TWR (KSC)

medical evidence in the record." (*See* AR at 25.) Specifically, the ALJ noted that Dr. Trinh's treatment notes "reported [Plaintiff]'s stream of consciousness was clear and coherent and reported the claimant displayed no abnormalities of thought and no perceptual disturbances." (*See id.* (citing *id.* at 1393).) Similarly, Dr. Chronister "reported [Plaintiff]'s stream of mental activity was linear, organized, articulated clearly, normal rate of speech[;]" "[Plaintiff] was alert and oriented as to person, place, and situation and . . . [Plaintiiff]'s level of intelligence was average and [he] had good concentration[;]" "[Plaintiff] was able to perform simple mathematical calculations and . . . to complete digit span forward and backward 1–10[.]" (*See id.* (citing *id.* at 682–83).)

Plaintiff faults the "inherent illogic in the ALJ's invocation of Dr. Chronister's (unpersuasive) opinion as a basis to find Dr. Trinh's opinion unpersuasive on the basis that the former undermines the latter particularly where, as here, Dr. Chronister never saw Dr. Trinh's office records." (*See* Jt. Mot. at 17–18.) The ALJ, however, does not rely on Dr. Chronister's *opinions*, but rather her clinical observations of Plaintiff, *i.e.*, "the objective medical evidence." (*See* AR at 25 (discussing Dr. Chronister's assessment of Plaintiff's "stream of mental activity," "rate of speech," "alert[ness]," "orient[ation]," "intelligence," and "concentration").) There is no "inherent illogic" in the ALJ's assessment that Dr. Chronister's treatment notes are consistent with Dr. Trinh's. Indeed, they are also consistent with those of several others, including Dr. Masino, (*see* AR at 23), and Mr. Zelikman, (*see* AR at 24).

Plaintiff also argues that "the ALJ's analysis is *at best* incomplete since comparing Dr. Trinh's opinion to Dr. Chronister's is only the *consistency* analysis required under § 404.1520c, not the *also required supportability analysis*." (*See* Jt. Mot. at 18 (emphasis in original).) The ALJ's supportability analysis, however, was his comparison of Dr. Trinh's opinions with her "own treatment notes[,]" which the ALJ concluded did not support the restrictiveness of her medical opinions. (*See* AR 25 (citing *id.* at 1393).) Accordingly, the ALJ did not err in discounting Dr. Trinh's opinions given that they were inconsistent with her own clinical findings. *See, e.g.*, *Kitchen*, 82 F.4th at 740 (holding

that "[s]ubstantial evidence support[ed] the ALJ's finding that [a doctor]'s opinion regarding [the claimant]'s mental impairments was not persuasive" where "[t]he ALJ reasoned that [the doctor]'s assessment of severe limitations was inconsistent with the medical record and with [the doctor]'s 'own unremarkable mental status examinations[]'" (citing *Tommasetti v. Astrue*, 533 F. 3d 1035, 1041 (9th Cir. 2008))).

**III.    Evaluation of Plaintiff's Testimony**

Finally, Plaintiff faults the ALJ's evaluation of Plaintiff's own testimony. (*See* Jt. Mot. at 19–20.) "To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis[.]" *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (alteration in original) (quoting *Garrison*, 759 F.3d at 1014–15).

> In assessing a claimant's credibility, the ALJ may consider, *inter alia*, (1) inconsistencies in the claimant's testimony or between her testimony and her conduct; (2) the claimant's daily living activities; (3) the claimant's work record; and (4) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition.

*Tahnee M. v. Kijakazi*, No. 22-CV-00257-BEN-JLB, 2023 WL 4624698, at *12 (S.D. Cal. July 19, 2023) (emphasis in original) (first citing *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002); then citing *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014)). "If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to engage in second-guessing." *Id.* (first citing *Thomas*, 278 F.3d at 959; then citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004)).

25-CV-1858 TWR (KSC)

Here, the ALJ determined that "[Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not consistent with the medical evidence and other evidence in the record." (*See* AR at 22.)  The Court therefore must determine whether the ALJ offered "specific, clear and convincing reasons" for discrediting Plaintiff's symptom testimony.

As an initial matter, "Plaintiff does not identify which part of his symptom testimony the ALJ improperly rejected or provide any meaningful analysis[,] . . . [and t]he Court cannot manufacture arguments for Plaintiff." *See Richard R. v. Bisignano*, No. 25CV894-CAB(LR), 2026 WL 1847874, at *7 (S.D. Cal. June 26, 2026) (report and recommendation) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003); *Souzan H. v. O'Malley*, No. 3:23-CV-00031-VET, 2024 WL 4307199, at *7 (S.D. Cal. Sept. 26, 2024)).  A review of the ALJ's decision, however, reveals that his decision to discount Plaintiff's testimony was based on two primary factors.

First, the ALJ began by comparing Plaintiff's testimony to the medical findings and notes provided by Dr. Chronister, Dr. Masino, Dr. Trinh, and Mr. Zelikman, (*see id.* at 22–24), concluding that, "while the record show[ed] [Plaintiff] experience[d] some symptoms, the evidence in the record fail[ed] to demonstrate functional deficits that exceed[ed] the limitations of the" RFC found by the ALJ.  (*See id.* at 22; *see also id.* at 24.) "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); 20 C.F.R. § 404.1529(c)(4) (explaining that, in assessing symptom testimony, ALJs are to consider "inconsistencies in the evidence and the extent to which there are conflicts between [the claimant's] statements and the rest of the evidence").

/ / /

25-CV-1858 TWR (KSC)

The ALJ then considered Plaintiff's activities of daily living as recorded by Drs. Trinh and Chronister, including independent self-care, driving, going to the gym for leisure activities, fixing things around the house, doing household chores, and leaving the house twice a week for groceries, which he found were "not consistent with [Plaintiff's] allegations of disabling symptoms and limitations." (*See* AR at 24 (citing *id.* at 413, 683).) "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165 (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004)); *see also, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (upholding ALJ's interpretation of daily activities as "suggest[ing] that [the claimant] [wa]s quite functional" where she was "able to care for her own personal needs, cooks, clean and shop[;]" "interact[] with her nephew and boyfriend[;]" and "manage her own finances and those of her nephew"). "Daily activities may also be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Id.* (internal quotation marks omitted) (quoting *Orn*, 495 F.3d at 639).

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt*, 53 F.4th at 499. "The standard isn't whether [the reviewing] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *See id.* In other words, as long as the ALJ's interpretation is reasonable and supported by substantial evidence, "it is not [the reviewing court's] role to second-guess it." *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Because the Court concludes that the ALJ "cited specific, clear, and convincing examples . . . contrasting [Plaintiff]'s subjective [symptom] testimony with objective medical evidence" and Plaintiff's daily activities, the Court finds that the ALJ did not err in discounting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his subjective symptoms. *See Smartt*, 53 F.4th at 499; *see also, e.g.*, *Kitchen*, 82 F.4th at 739 (concluding the ALJ's explanation for discounting the claimant's testimony "was 'specific, clear and convincing[]'" where "[t]he

ALJ reasoned that most of [the claimant]'s physicians opined that his mental impairments were 'mild[]' or 'moderate,' rather than disabling[]" and the claimant "[e]xperienced 'a gradual improvement in his functioning with prescribed medication and psychotherapy sessions[]'" (fourth alteration in original) (first quoting *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006); then quoting *Treichler v. Comm'r*, 775 F.3d 1090, 1102 (9th Cir. 2014)) (citing *Carmickle*, 533 F.3d at 1161)); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (concluding "[t]he ALJ sufficiently explained his reasons for discrediting claimant's testimony" where the ALJ explained "[t]he record reflect[ed] that the claimant ha[d] normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances[]" and "the medical evidence . . . found [the claimant] could perform a limited rand of work"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (concluding that ALJ provided clear and convincing reasons for rejecting claimant's testimony where medical records "undermined [the claimant]'s complaints" and the claimant was able "to fix meals, do laundry, work in the yard, and occasionally care for his friend's child").[1]

/ / /

---

[1]      Additional recent, unpublished decisions from the Ninth Circuit—while not binding—support the Court's conclusion.  *See, e.g.*, *Regalado v. O'Malley*, No. 23-15693, 2024 WL 3439586, at *1 (9th Cir. July 17, 2024) (finding that "[s]ubstantial evidence supported the ALJ's reasons for not relying on [the claimant]'s testimony and other descriptions related to her RFC" where "[t]he ALJ reasonably declined to rely on [the claimant]'s symptom testimony based on the contradictions between her testimony and the medical record[;]" "reasonably weighed [the claimant]'s treatment course against her allegedly disabling symptoms[;]" and the claimant "could go out in public, shop in stores, . . . interact appropriately with her treatment providers[,] . . . prepare simple meals, drive, shop, pay bills, . . . read as a hobby[,] . . . [and] was functionally independent, including doing housework and going on walks"); *Scott v. Kijakazi*, No. 21-35503, 2022 WL 2702734, at *1 (9th Cir. July 12, 2022) (concluding that ALJ provided clear and convincing reasons for discounting claimant's testimony where claimant reported "to medical providers that she participated in activities such as two quarter-mile walks daily, two 90-minute yoga classes weekly, pool therapy, and was learning how to quilt" and "had sought relatively conservative treatment"); *Drayton v. Kijakazi*, No. 18-16846, 2022 WL 1500797, at *1 (9th Cir. May 12, 2022) ("The ALJ provided specific, clear, and convincing reasons to discount [the claimant]'s testimony, citing factors including lack of corroborating objective medical evidence, inconsistent claimant testimony, and inconsistent behavior." (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *Carmickle*, 533 F.3d at 1161; *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001))).

25-CV-1858 TWR (KSC)

## CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the final decision of the Commissioner.  Accordingly, the Court **DIRECTS** the Clerk of Court to issue a final Judgment and close this case.

**IT IS SO ORDERED.**

Dated:  July 14, 2026

Honorable Todd W. Robinson
United States District Judge

25-CV-1858 TWR (KSC)